IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RICKY ROGERS a/k/a
RICKY ROGERS WHITELOW,

      Plaintiff,

vs.                                   No. 07-2122-JPM-tmp

SHELBY COUNTY, et al.,

      Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On February 16, 2007, Plaintiff Ricky Rogers a/k/a Ricky Rogers Whitelow, RNI number 14571, who was, at the time, an inmate at the Shelby County Division of Correction ("SCDC") in Memphis, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 against Shelby County,[1] Counselor Perry, and Counselor Clemons. (Docket Entry ("D.E.") 1.) The Court issued an order on June 5, 2007 that assessed the civil filing fee and directed the Clerk to issue summonses for, and the marshal to effect service on, Defendants. (D.E. 4.) Defendants answered the complaint on

---

[1] The complaint names as a defendant the Adult Offender Center ("AOC"), which is part of the SCDC. As the AOC is not a suable entity, the Court has construed the allegations against the AOC as an attempt to assert a claim against Shelby County.

September 21, 2007. (D.E. 11.) According to the Tennessee Department of Correction website, Plaintiff's sentence ended on November 19, 2007, but, as discussed infra, he did not provide the Clerk a forwarding address until six months later.

On March 17, 2008, Defendants filed a motion to dismiss or, in the alternative, summary judgment, supported by a legal memorandum, a statement of undisputed facts, and the affidavits of Reese Walker, a Care & Custody Counselor at the SCDC, and Gary L. Soileau, the Health Services Administrator for the Correct Care Solutions Medical Unit at the SCDC. (D.E. 18.) The certificate of service indicated that a copy was mailed to Plaintiff at 1238 Quinn Street, Memphis, Tennessee 38106, which was not Plaintiff's address of record when the motion was filed. Plaintiff did not file a timely response to the motion. On May 12, 2008, Plaintiff filed a notice of change of address (D.E. 22), which listed an address different than the address to which Defendants' motion had been served. At a pretrial conference on May 19, 2008, the Court granted Plaintiff an extension of time, until June 19, 2008, to respond to Defendants' motion. (D.E. 25, 27.) Plaintiff has not responded to Defendants' motion, and the time for response has expired.

Pursuant to Local Rule 7.2(a)(2), a motion requesting dismissal of a claim or action should not be granted on the ground that a party has failed timely to respond. It also may not be appropriate to dismiss this case for failure to prosecute because this pro se litigant appeared at the pretrial conference and the record does not clearly reflect that he was notified that the case

would be dismissed if he did not respond to Defendants' motion. The Court will, therefore, address the merits of the motion.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[2]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require

---

[2] Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

4

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).

The complaint alleges that Plaintiff was deprived of outdoor recreation and exercise. Specifically, Plaintiff alleged as follows:

1. Plaintiff works the kitchen at the Adult Offender Center (A.O.C.) and is being mistreated by counselors acting under color of law.

2. For the months of October, November and December of 2006 Plaintiff has been deprived of exercise and

>     outdoor recreation where other inmates are permitted such opportunities. This was true also for Jan. 2007.
>
> 3.  I have asked Counselors Perry and Clemmons for exercise and recreation time and I'm rudely told no.
>
> 4.  I have asked for grievance forms from both Counselors Perry and Clemmons and am continuously rudely refused.
>
> 5.  I am currently suffering psychological stultification and physical pain such as headaches, sore and stiff joints and back pain.

(D.E. 1 at 3.)[3]

In response, Defendants have submitted the affidavit of Reese Walker, which states, in pertinent part, as follows:

> 2.  That I am currently employed by Shelby County Government as a Care & Custody Counselor at Shelby County Division of Corrections . . . in a supervisory position as Counselor (A). Beginning on May 16, 2006 I was assigned to work at the Division's Adult Offender (AOC) facility on the 1400-2200 hour shift.
>
> 3.  That I am familiar with the day-to-day operations of AOC particularly involving inmate movement/activities including the various inside and outside inmate work crews assigned to AOC on the evening (1400-2200 hour) shift.
>
> 4.  That as part of the rehabilitation process, inmates with the lowest security classifications are housed at the AOC and are required to work inside or outside jobs if they meet the qualifications. Inmate Ricky Rogers a/k/a Ricky Rogers (Whitelow) (RNI # 14571) was incarcerated at SCDC on April 25, 2005 and released on 11/28/07.
>
> 5.  That on May 10, 2006 Rogers' security classification was a minimum three (3) which allowed him to be housed at AOC. On August 24,

---

[3] Plaintiff's verified complaint is the functional equivalent of an affidavit. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001); Weberg v. Franks, 229 F.3d 514, 526 n.14 (6th Cir. 2000).

2006, Mr. Rogers (Whitelow) was housed at AOC (Building II) and assigned to the inside evening (P.M.) kitchen work on August 25, 2006 until April 19, 2007. The P.M. shift worked from 11:00 a.m. to 7:00 p.m. (1100 hours to 1900 hours) six days a week. Mr. Rogers (Whitelow) received between 38 and 41 work line credits per month for working on a work line. These credits are used to reduce the inmate's sentence towards his early-release date.

6. That Rick Rogers' (Whitelow's) job assignments were located in a different building from where he was housed and required him to walk a distance of 350 feet from his housing unit (Building II) to report to duty in the kitchen located in Building I. He walked this distance a minimum of twice daily when he worked.

7. That his work was very physical in nature. He performed duties that required him to engage in physical activities including lifting, pushing, pulling and scrubbing. Rogers (Whitelow) worked all over the kitchen area and complained to neither line staff nor supervisors about not being allowed to receive outdoor recreation or about any illness associated with such a claim. Rogers' (Whitelow's) work itself involved considerable physical activities.

8. That Rogers (Whitelow) had numerous opportunities to have interaction with staff and fellow inmates due to the nature of his work and dormitory housing arrangement.

9. That the P.M. kitchen shift generally took a break (between 1:30 p.m. and 3:30 p.m.) before the evening meal was served. For a while, we allowed this work crew to use their break to go outside for recreation time with their fellow inmates from Building II. This practice was quickly stopped due to the feeding schedule and potential sanitation issues.

10. That during daylight savings time in fall and winter months from October 2006 to January 2007 outdoor recreation time varied. Depending on the starting time, recreation may have been completed as early as 5:15 p.m. and as late as 6:00 p.m. when the weather was not inclement. AOC restricts movement during hours that have dim light or darkness to reduce the escape/flight risk.

>     Therefore, by the time Ricky Rogers (Whitelow) got off work in the evenings, outdoor recreation was not possible during this time.
>
> 11. That due to the restrictive work schedule for P.M. kitchen workers, alternative procedures for recreation were attempted for a while whereby the P.M. kitchen workers could watch movies/videos in one of the class rooms or inmate dining hall during their break. These inmates were also allowed to spend some time at the end of the P.M. shift to play basketball in the multipurpose gym for approximately 30 minutes before they went back to their dorms.
>
> 12. That there were other opportunities for Ricky Rogers (Whitelow) and other P.M. kitchen workers to get recreation and outdoor exercise prior to the 11:00 a.m. shift start and on their regular off days. The dormitory (in Building II) that housed Mr. Rogers (Whitelow) is a large open-space room (586 square feet) that may sleep 12 to 14 inmates. The dormitories each have a game table and space utilized as an area for interaction among inmates in the dormitory. Many inmates exercise inside their dormitory room.
>
> 13. That on many occasions, Ricky Rogers (Whitelow) voluntarily worked on his regular day off (Sundays) during the months of October and November 2006. Although he had the opportunity to attend recreation call on his regular days off, he chose to work in the kitchen. He did not receive any additional credits for working on his off-days.

Affidavit of Reese Walker, sworn to on Mar. 13, 2008 ("Walker Aff.") (D.E. 18-4).

Defendants also submitted the affidavit of Gary L. Soileau, who stated as follows:

> 2. That I am employed as the Health Services Administrator for Correct Care Solutions medical unit at the Shelby County Division of Corrections . . . and have held that position since July 1, 2006. I previously held the position of Health Services Administrator for Correctional Medical Services (CMS) from October 1, 1997 to June 30, 2006 at SCDC. As Health Services Administrator, I am the

> keeper of medical records for all inmates who received medical services at the SCDC.
>
> 3. That Correct Care Solutions, aka "CCS", is a non-governmental entity contracted with Shelby County to provide medical services for individuals confined at SCDC and has provided said services since July 1, 2006.
>
> 4. That as the Administrator of CCS, I am the keeper of the inmate medical records for medical services provided while at the SCDC.
>
> 5. That I have reviewed the medical records of inmate Ricky Rogers RNI #14571 (a/k/a Ricky Rogers Whitelow #14571) for the period from September 1, 2006 through February 28, 2007 which document the following complaints:
>
>    - On September 10, 2006 I/M Rogers (#14571) complained of pain to his back after having picked up too many boxes at one time.
>
>    - On February 14, 2007 I/M Rogers (#14571) complained his joints and back had been hurting. He stated he was having headaches. Rogers (#14571) claimed not have not been allowed any exercise.
>
>    - On February 20, 2007 I/M Rogers (#14571) complained of low back pain due to history of gun shot wound (some years ago).
>
> 6. Each visit and complaint he voiced to CCS was appropriately addressed by the CCS medical staff.

Affidavit of Gary L. Soileau, sworn to on Mar. 17, 2008 ("Soileau Aff.") (D.E. 18-5).

Plaintiff's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28

(6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. <u>Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.</u>

<u>Wilson</u>, 501 U.S. at 304-05 (citations omitted; emphasis added); <u>see also</u> <u>Thompson v. County of Medina, Ohio</u>, 29 F.3d 238, 242 (6th Cir. 1994); <u>Walker v. Mintzes</u>, 771 F.2d 920, 925026 (6th Cir. 1985).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1222 (6th Cir. 1997); <u>Street v. Corrections Corp. of Am.</u>, 102 F.3d 810, 814 (6th Cir. 1996); <u>Taylor v. Michigan Dep't of Corrections</u>, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. Thus,

> <u>[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and</u>

<u>disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.</u> This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837-38 (emphasis added; citations omitted); see also <u>Garretson v. City of Madison Heights</u>, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

In this case, Plaintiff presumably contends that he was deprived of the opportunity for outdoor exercise. "The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred.'" <u>Spencer v. Bouchard</u>, 449 F.3d at 727 (quoting <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000)). To put Plaintiff's claim in perspective, courts have held that the confinement of inmates to their cells for twenty-three (23) hours a day—a deprivation far more severe than that experienced by Plaintiff—does not violate the Eighth Amendment. <u>Argue v. Hofmeyer</u>, 80 F. App'x 427, 429 (6th Cir. 2003); <u>In re Long Term Admin. Segregation of</u>

12

Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999); see also Coleman v. Bradley, No. 1:07-cv-468, 2007 WL 2461699, at *3 (W.D. Mich. Aug. 27, 2007) (dismissing claim that inmate was confined to his cell from noon to midnight for 30 days); Bagetta v. Carusos, No. 1:07-CV-289, 2007 WL 1577830, at *4 (W.D. Mich. May 30, 2007) (dismissing claim that inmates are confined to their cells on weekdays, because "[t]he federal courts have held that similar and even longer periods of cell confinement do not violate the Eighth Amendment"). In this case, Plaintiff was housed in a dormitory setting, he had a job in the prison kitchen, and he had ample opportunity every day to interact with staff and other inmates. Walker Aff., ¶¶ 5, 8, 11-12. He was not isolated or deprived of human contact.

As for Plaintiff's claim that he is not afforded an opportunity for outside recreation, the Sixth Circuit has not "set a minimum amount of time a prisoner must have access to outdoor recreation, Argue, 80 F. App'x at 430; Rodgers v. Jabe, 43 F.3d 1082, 1086-87 (6th Cir. 1995); Walker, 771 F.2d at 927-28; Carruthers v. Mills, No. 06-2259-B/P, 2007 WL 676718, at *4 (W.D. Tenn. Mar. 1, 2007); Conyers v. Michigan Dep't of Corrections, No. 5:06-CV-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006) (dismissing claim of inadequate exercise where "Plaintiff does not allege that he is denied sufficient opportunity for exercise in order to maintain reasonably good health."). Although Plaintiff was unable to participate in regularly scheduled outdoor recreation time six days a week because of his work assignment, Plaintiff was

13

necessarily outside every day, at least for the time it took to walk from his dormitory to his work assignment. Walker Aff., ¶ 6. Plaintiff also was not deprived of physical activity, as his job in the prison kitchen "was very physical in nature." Id., ¶ 7; see also Soileau Aff., ¶ 5 (noting Plaintiff's complaint about back pain due to picking up too many boxes at one time). Plaintiff has not alleged that he was unable to exercise after work, during his day off, or while confined to his dormitory. Walker Aff., ¶¶ 11-13. That Plaintiff had limited time for outdoor recreation due to his work commitment does not serve to distinguish Plaintiff's situation from that of numerous other workers, who are not incarcerated but who are limited in their ability to exercise due to their work schedules. It also appears that Plaintiff voluntarily restricted his own opportunities for exercise by volunteering to work during his scheduled off days. Id., ¶ 13. Thus, Plaintiff has not raised a triable issue of fact as to whether he was given sufficient opportunity for recreation or other physical activity sufficient to maintain him in reasonably good health.

That conclusion is not altered by Plaintiff's conclusory allegation that, at the time the action was commenced, he was suffering form "psychological stultification and physical pain such as headaches, sore and stiff joints and back pain." (D.E. 1 at 3.) Before he filed this lawsuit, Plaintiff did not complain to his supervisors in the kitchen about not being allowed the opportunity for outside recreation or about any physical discomforts resulting form a lack of outside exercise. Walker Aff., ¶ 7. Plaintiff also

14

did not seek medical attention for the symptoms about which he complained until February 14, 2007, ten days after his complaint was signed and two days before it was received by the Clerk. Soileau Aff., ¶ 5. Thus, at the time he signed his complaint no doctor had diagnosed the lack of outside recreation as the source of Plaintiff's physical ills, and the record is devoid of evidence that any physician subsequently prescribed more outdoor exercise.[4]

For all the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The complaint is DISMISSED WITH PREJUDICE.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id.

---

[4] Given Plaintiff's September 10, 2006 complaint of back pain from lifting boxes, Soileau Aff., ¶ 5, Plaintiff cannot establish by a preponderance of the evidence that his physical ills resulted from inactivity, rather than from overexertion while at work.

15

at 445-46. The same considerations that led the Court to grant Defendants' motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and 28 U.S.C. § 1915(b).

IT IS SO ORDERED this 25th day of August, 2008.

/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE